UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WILLEMSEN DAIRY, LLC, | ) | Case No. 10-13036-JKC-11 |
| | ) | |
| Debtor. | ) | |

**FIRST DAY MOTION FOR ORDER AUTHORIZING DEBTOR-IN-POSSESSION FINANCING AND USE OF CASH COLLATERAL; MODIFYING THE AUTOMATIC STAY; AND REQUESTING PRELIMINARY AND FINAL HEARING**

The debtor and debtor in possession, Willemsen Dairy, LLC ("Debtor") in the above captioned chapter 11 case ("Chapter 11 Case"), hereby files this motion ("DIP Motion") respectfully requesting interim and final orders (a) authorizing the Debtor to obtain postpetition financing provided by Willemsen Holdings, LLC ("DIP Lender"); and (b) scheduling a preliminary, expedited hearing ("Interim Hearing") and a final hearing ("Final Hearing") pursuant to Bankruptcy Rules 4001(c) and 4001(d) and 6004(a)(2).  In support of this DIP Motion, the Debtor relies on the *Affidavit of Teunis Jan Willemsen In Support Of First Day Motions* ("Willemsen Affidavit"), which is incorporated by this reference as if fully set forth herein, and may present additional evidence at the hearing on the DIP Motion.

In further support of this DIP Motion, the Debtor represents as follows:

**SUMMARY OF RELIEF REQUESTED AND TERMS OF AND CONDITIONS TO THE DIP FINANCING (FRBP 4001(b) and (c)) AND LOCAL BANKRUPTCY RULE B-4001-2**

1.     The Debtor is seeking authority to secure post-petition financing and the use of cash collateral to provide necessary support for continued operations and to allow the Debtor to reorganize.  After extensive, arms-length negotiations with DIP Lender, the Debtor has successfully negotiated an agreement for post-petition financing with DIP Lender ("DIP

Financing"). A copy of the Credit and Security Agreement negotiated by Debtor and DIP Lender, with the consent, agreement and acknowledgement of Willemsen Dairy Leasing, LLC, an Indiana limited liability company, a non-debtor, related entity ("Leasing"); AgStar Financial Services, PCA, Debtor's prepetition lender ("AgStar PCA" or "Prepetition Lender"); and Agstar Financial Services FLCA, a lender to Leasing and an affiliated entity to the Prepetition Lender ("AgStar FLCA"), is attached hereto and made part hereof as Exhibit A ("Credit Agreement"). All capitalized terms herein not otherwise defined shall have the meaning ascribed to them in the Credit Agreement.

2.  Pursuant to FBRP 4001(b) and (c) and Local Rule B-4001-2, the Debtor makes the following disclosures as to the terms and conditions of the proposed DIP Financing:

(a) DIP Lender will make two loans to the Debtor as follows: (i) a Term Loan in the principal sum of $750,000 and (ii) a Revolving Loan in the principal sum of $1,000,000, all as set forth more fully in the Credit Agreement. The maturity date for each of the Term Loan and Revolving Loan is the earlier of (a) confirmation of a reorganization plan by Debtor, (b) the acceleration of the loans and termination of the commitments by DIP Lender as permitted by and under the terms of this Credit Agreement, and (c) August 29, 2011. Debtor shall make payments on the Term Loan in monthly principal installments of Seventeen Thousand Six Hundred Fourteen and 00/100ths Dollars ($17,614.00), commencing on September 10, 2010, and continuing on the tenth (10th) day of each month thereafter. Debtor shall make payments on the Revolving Loan against the accrued and unpaid interest on the unpaid principal balance of all advances outstanding from time to time monthly, in arrears, commencing on September 10, 2010 and continuing on the tenth (10th) day of each calendar month thereafter, and on the Revolving Loan Maturity Date, as defined in the Credit Agreement. The Interest Rate with respect to both loans is six percent (6%), consistent with the terms of the Credit Agreement. Credit Agreement, pages 7 through 9;

(b) Events of Default under the Credit Agreement are: (i) non-payment; or (ii) Debtor's breach of Debtor's representations of warranties; or (iii) an event of default under the AgStar Dairy PCA Loans or AgStar Leasing FLCA Loans (as both are defined in the Credit Agreement); or (iv) the invalidity of any material provision of the Credit Agreement; or (v) any priming of the liens and priority to be granted to the DIP Lender; or (vi) conversion of the case to a case under chapter 7; or (vii) the entry of orders by the Bankruptcy Court granted relief from the automatic stay to the holder or holders of any security interest or creditor

to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any material assets of the Debtor, or to permit other actions which would responsibly be expected to have a material adverse effect on DIP Lender; or (viii) breach by the Debtor of the DIP Financing Orders; or (ix) the entry of a Final DIP Order shall not have occurred on or before September 30, 2010; or (x) an order shall be entered by the Bankruptcy Court dismissing the case that does not contain a provision for termination of the Loans and indefeasible payment in full in cash of the Obligations on the date any such order is entered, all as set forth more fully in the Credit Agreement. Credit Agreement, pages 15 and 16;

(c)   DIP Lender will receive super-priority administrative claim status in accordance with Section 364(c)(1) of the Bankruptcy Code for any and all obligations incurred by Debtor to DIP Lender in accordance with this DIP Motion, including without limitation, all loans, extensions of credit, advances and all other indebtedness and obligations incurred by Debtor to DIP Lender of every nature and however arising, absolute or contingent, direct or indirect, including without limitation, all regular and default interest, fees, charges, costs and expenses, servicing and other fees in the Credit Agreement now existing or arising after the entry of the Interim Financing Order requested herein (collectively, "DIP Obligations"). Credit Agreement, pages 9 and 10; Interim Financing Order (as defined in paragraph 17 hereof), page 7;

(d)   Conditions precedent to the Loans include the entry of an order of the Bankruptcy Court approving the terms and conditions of the Loans (including without limitation, (i) the finding that the DIP Lender is a good faith lender under 364(e) of the Bankruptcy Code, (ii) pursuant to Sections 364(c)(2) and (c)(3) of the Bankruptcy Code, authorizing and granting the security interests and liens upon all property of the Debtor's estate defined under Section 541 of the Bankruptcy Code and otherwise described above, and (iii) pursuant to Section 364(c)(1) of the Bankruptcy Code, the granting of the superpriority status and liens as described, and (d) the automatic perfection of all liens referred to herein, such order to be in the form and substance satisfactory to the Lender in its sole discretion and which shall not have been reversed, modified, amended or stayed without the prior written consent of the DIP Lender. Further, that such order shall also (y) approve the Debtor's waiver of any and all claims and causes of action against the DIP Lender (and its respective affiliates) directly related to the loans or the negotiation of the terms thereof, and (z) prohibit subsequent granting of Liens or priority status superior to, or pari passu with, those provided in connection with the Loans, all as set forth more fully in the Credit Agreement. Credit Agreement, page 11;

(e)   The DIP Financing contemplates a "Carve-Out," as such term in defined in the Credit Agreement, which does not include fees for any professionals of any creditors' committee that may be appointed. Credit Agreement, page 3;

(f) DIP Lender will receive (i) superpriority, valid, binding, enforceable and first perfected liens and security interests in all the Debtor's presently owned or hereafter acquired property and assets (including, under the terms of any Final DIP Order, claims and causes of action brought under Chapter 5 of the Bankruptcy Code and proceeds thereof), whether such property and assets were acquired by Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, all with the consent of Prepetition Lender whose prepetition liens against the assets of Borrower presently hold a first priority position and (ii) valid, legal and perfected liens on and security interests in all right, title and interest in all assets of Leasing, junior solely to the AgStar Leasing Liens, as defined in the Credit Agreement (collectively, "DIP Collateral"). Credit Agreement, pages 9 and 10; Interim Financing Order, page 7 through 9;

(g) The proposal includes a finding that substantially all of the Debtor's cash, including, without limitation, all cash and other amounts on deposit or maintained by Debtor in any account or accounts, constitute proceeds of collateral and, therefore, are cash collateral of DIP Lender within the meaning of Section 363(a) of the Bankruptcy Code ("Cash Collateral"). Interim Financing Order, pages 10; and

(h) The proposal provides that the Debtor and its estate will waive and release all claims it may have regarding based on theories of lender liability and Sections 510, 544, 547, 548 and 549 of the Bankruptcy Code. Interim Financing Order, pages 12 through 13; and

(i) The proposal provides that the Debtor and its estate will waive and release all claims it may have contesting the validity, perfection or amounts of the claims and liens of DIP Lender and Prepetition Lender. However, any official committee of unsecured creditors appointed by the United States Trustee ("Committee") or any party with standing to challenge the DIP Liens or the Prepetition Lender Liens and the Lien Finding (as such term is defined in the Interim Financing Order) will have no more than sixty (60) days after the entry of the Interim Financing Order to file an objection to the Lien Finding or thereafter be forever barred from challenging the Lien Finding. Interim Financing Order, page 12 through 13.

## JURISDICTION

3. On August 20, 2010 ("Petition Date"), the Debtor filed with the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division ("Court"), its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. as amended ("Bankruptcy Code") commencing this Chapter 11 Case.

BDDB01 6254373v4

The Debtor continues to operate its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4.  No trustee or examiner has been appointed, and no committee has yet been appointed or designated.

5.  This Court has jurisdiction to consider this DIP Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

6.  The statutory predicates for the relief requested herein are sections 105, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 507 of the Bankruptcy Code and Rules 4001(c), 4001(d) and 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules" or "FRBP").

## BACKGROUND AND EVENTS LEADING TO FILING

7.  As more fully set forth in the Willemsen Affidavit, the Debtor is a member managed Indiana limited liability company wholly owned by Teunis Jan Willemsen ("Teunis") that operates a commercial family dairy farm located at 6615 W. 500 N., Frankton, Indiana 46044.

8.  The severe fluctuations in milk prices over the last two years directly contributed to the Debtor's current circumstances. A more in-depth discussion of the Debtor's business, creditors, and the events leading to this Chapter 11 Case is set forth in the Willemsen Affidavit.

## PREPETITION INDEBTEDNESS

9.  The Debtor leases its facilities from Leasing and prior to the filing of this case, financed its business operations through two loans from Prepetition Lender ("Prepetition

Loans"): (i) a loan to purchase cows with present indebtedness ("Cow Loan") and (ii) a loan to finance the correction of stray voltage ("Stray Voltage Loan" and together with the Cow Loan, "Prepetition Loans"). Debtor estimates that the aggregate indebtedness of Debtor to Prepetition Lender as of the Petition Date on account of the Prepetition Loans is the approximate sum of $3,000,000 ("Prepetition Indebtedness"). The Prepetition Loans include language granting Prepetition Lender a security interest in substantially all the assets of the Debtor, including cash and account receivables (collectively, "Prepetition Lender Collateral"). Prepetition Lender first filed a UCC-1 financing statement on March 15, 2005 asserting a security interest in:

> All now owned or hereafter acquired: milk and accounts from milk sales, crops growing or to be grown, cash and crop share rents, warehouse receipts, harvested and processed crops, livestock, feed, seed, fertilizer, agricultural chemicals and other supplies, and all products and proceeds of collateral, machinery and equipment, all contract rights, chattel paper, documents, accounts, and general intangibles, whether now owned or hereafter acquired by Debtor, including but not limited to all entitlements, rights to payment and payments (in whatever form, received, including but not limited to, payments in cash or in kind) under any current or future state or federal governmental programs including, but not limited to, governmental agricultural diversion programs, governmental agricultural assistance programs and the United States Department of Agriculture Farm Service Agency (FSA) Feed Grain program; and all proceeds of the foregoing.

The Prepetition Loans include personal guarantees of Teunis Jan Willemsen. The Debtor further finances some of its equipment through purchase money financing leases or loans.

10. Beginning in or around Spring, 2009, dairies across the country were hit hard as market prices for milk fell dramatically to lows of less than $10 per hundred weight ("CWT") from highs of up to $24 per CWT in the prior years. The dramatic decline in the prices a buyer was willing to pay for milk substantially decreased the Debtor's revenues at the same time that fixed costs for feed and other supplies went up. Accordingly, Debtor's profit margins fell dramatically. Despite that, the Debtor, through cost cutting and efficiency measures, has

-6-

BDDB01 6254373v4

been able to safely maintain its operations though the loss of revenue required negotiations with lenders, including Prepetition Lender.

11. However, with the dramatic loss in revenue, the Debtor's decreased profits made it impossible to operate the dairy operations at capacity. Debtor did not have the funds to replace aging and ineffective cows, resulting in an increase of the cull rate of cows. As such, the Debtor's inventory of cows dropped from a peak of approximately 1500 productive cows to a low of 780 productive cows as of the Petition Date. The loss of these "profit margin" cows dramatically affected the Debtor's ability to cover its daily operating costs and service its debt.

12. In response to the declining milk prices and decreased profit margins, the Debtor has eliminated unnecessary costs and reworked unprofitable contracts. Through these efforts, the Debtor has dramatically reduced the minimum production needed for a "break even" operation. During this time, the Debtor, pursuant to an agreement with Prepetition Lender, continued to make interest-only payments on the Prepetition Loans and is current with most of its vendors. The Debtor made interest payments to Prepetition Lender through August 2010. Milk prices have started to rebound and the Debtor forecasts stabilizing revenue and anticipates a return to profitability.

13. However, with the decline in productive cows and no capital available as of yet to purchase new cows, the Debtor has continued to struggle. Several months ago, the Debtor undertook to identify a new lender for the purposes of providing financing to fund business operations or invest in the inventory necessary to further increase profits and pay down outstanding debt. However, given the Debtor's current situation with regard to its creditors, the Debtor needs the protections and breathing room of a chapter 11 case to complete its cost restructuring and put a plan in place for future growth and profitability.

BDDB01 6254373v4

14. The Debtor understands and believes that the Prepetition Indebtedness is secured by a lien and security interest (the "Prepetition Lender Lien") in and to substantially all of the Debtor's assets and properties ("Prepetition Lender Collateral") pursuant to, *inter alia*, various UCC-1 financing statements and security agreements properly perfected and filed.

15. Prior to the Petition Date, Prepetition Lender declared or was entitled to declare several events of default under the Prepetition Loans and further indicated that it could and would likely refuse any funding requests of the Debtor.

16. Recognizing the Debtor's need to restructure its indebtedness to Prepetition Lenders, Debtor approached Mr. Marc Van Goey, a citizen and resident of Belgium and an equity owner in Leasing, to fund DIP Lender, a new entity, to provide debtor-in-possession financing to it in the aggregate sum of $1,750,000, per (i) a revolving loan in the sum of $1,000,000 to be used to finance this Chapter 11 Case and to fund the operation of the Debtor postpetition and support the restructure of the Debtor's obligations pursuant to an anticipated confirmed Chapter 11 plan of reorganization, and (ii) a term note in the sum of $750,000 to fund a $750,000 payment to Prepetition Lender to pay down the Prepetition Indebtedness and secure the consent of Prepetition Lender and AgStar Financial Services FLCA ("AgStar FLCA") to the terms of the DIP Financing.

**RELIEF REQUESTED**

17. By this DIP Motion, the Debtor seeks, among other things, under Section 105, 362, 363, 364(c)(2)-(3), and (d) of the Bankruptcy Code, this Court's entry of an interim order substantially in the form of attached Exhibit B which has been negotiated with, and the Debtor believes is acceptable to, DIP Lender and Prepetition Lender ("Interim Financing Order"). The Interim Financing Order approves the agreement of DIP Lender and Prepetition Lender to allow the Debtor to use cash collateral and for DIP Lender to provide financing

-8-

pursuant to a budget approved by Lender ("Initial Approved Budget") from the date of entry of the Interim Financing Order through and including the date of entry of a final order ("Interim Financing Period") (a true and correct copy of the Initial Approved Budget is attached hereto as Exhibit C). The approved use of cash collateral and other accommodations of DIP Lender shall be collectively referred to herein as "DIP Financing."

18. The Debtor further requests entry of a final order ("Final Financing Order") in form and substance approved by DIP Lender authorizing the continuation of the DIP Financing beyond the Interim Financing Period.

19. The Initial Approved Budget sets forth all projected cash receipts, sales and cash disbursements on a monthly basis for the time period beginning on August 20, 2010 up through and including the month ending December, 2011. The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering time periods already covered by prior budgets or covering additional time periods) to which DIP Lender and the Debtor agree in their respective discretion. Such additional budgets shall be filed with the Court.

## BASIS FOR RELIEF

20. If a debtor is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Code, then the court, after notice and a hearing, may authorize the Debtor to obtain credit or incur debt:

> (a) with priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Code;
>
> (b) secured by a lien on property of the estate that is not otherwise subject to a lien; or

BDDB01 6254373v4

(c) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c).

21. Further, if a debtor is unable to obtain credit under the provisions of Section 364(c) of the Code, the debtor may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly called a "priming lien". 11 U.S.C. § 364(d). Prepetition Lender supports and approves the terms of the DIP Financing, including the "priming liens" being granted against the Debtor's assets. Prepetition Lender and AgStar FLCA likewise support and approve the grant of the liens and security interests to DIP Lender in the Additional Collateral, junior solely to AgStar Leasing Liens (as those terms are defined in the Credit and Security Agreement).

22. Rule 4001(c) of the Bankruptcy Rules governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

FRBP 4001(c). Accordingly, the Court is authorized to grant the relief requested herein.

23. The terms and provisions of the DIP Financing have been negotiated at arms' length and in good faith. In addition, the terms and provisions of the DIP Financing are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtor could obtain the needed post-petition financing.

24. Having determined that financing was available only under Section 364(c) and (d) of the Bankruptcy Code, the Debtor negotiated the DIP Financing pursuant to its business judgment. Provided that this judgment does not run afoul of the provisions of and policies

BDDB01 6254373v4

underlying the Code, courts grant a debtor considerable deference in acting in accordance with its business judgment. See Bray. v. Shenandoah Fed. Say. & Loan Ass'n, 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor-in-possession financing necessary to sustain seasonal business); see also In re Ames Department Stores, 115 B.R. 34, 40 (S.D.N.Y. 1990)("cases consistently reflect that the court's discretion under Section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or their purpose is not so much to benefit the estate as it is to benefit parties in interest").

25. The DIP Financing is not out-of-line with current debtor-in-possession financings in these difficult economic times. As credit has contracted, even in the non-insolvency world, the number of lenders in the insolvency world has decreased and the terms of any such lending have become more demanding. Recent cases in which debtor-in-possession lending included roll-up of prepetition debt into postpetition financing or other "extraordinary relief" include the bankruptcy cases of Linens Holding Co., Case No. 08-10832 (Bankr. D. Del.) (CSS) (roll-up of prepetition facility), Circuit City Stores, Inc., Case No. 08-35653 (Bankr. E.D.Va. Nov. 10, 2008) (KRH) (roll up of prepetition debt and priming liens on all property), Pilgrim's Pride Corporation, Case No. 08-45664 (Bankr. N.D.Tex. Dec. 30, 2008) (DML) (prepetition and postpetition loans borrowing base and priming lien on all postpetition property), and Lyondell Chemical Co., Case No. 09-10023 (Bankr. S.D.N.Y. Jan. 8, 2009) (REG) (priming lien on all assets).

26. The DIP Financing provides significant additional liquidity to the Debtor and thus will enable the Debtor, among other things, to (a) maintain the continuity of its operations, and (b) maximize the value of its business and property.

-11-

BDDB01 6254373v4

27. Accordingly, the Debtor believes that the approval of the DIP Financing is in the best interests of the estate, creditors and all parties-in-interest, and that the Court should therefore approve the Interim Financing Order and schedule the Final Hearing to consider the entry of the Final Financing Order. Moreover, for the reasons hereinabove stated, Lender should be accorded the benefits inuring under Section 364 of the Bankruptcy Code.

### INTERIM APPROVAL OF THE DIP AGREEMENT SHOULD BE GRANTED

28. Bankruptcy Rule 4001(c) provides that a final hearing on a motion to obtain credit pursuant to Section 364 may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing (an "Interim Hearing") on the DIP Motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable to the Debtor's estate.

29. The Debtor requests that the Court conduct an Interim Hearing on the DIP Motion and authorize the Debtor from and after the entry of the Interim Order until the Final Hearing to obtain credit under the Interim Financing Order and pursuant to the Initial Approved Budget. This will enable the Debtor to access cash, maintain ongoing operations, and avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending the Final Hearing.

### NOTICE WITH RESPECT TO THE INTERIM AND FINAL HEARINGS

30. The Debtor will provide, on the Petition Date, notice of this DIP Motion and the Interim Hearing by telephone, electronic mail, overnight delivery service, or hand delivery, to (i) the office of the United States Trustee for the Southern District of Indiana; (ii) the Internal Revenue Service; (iii) the Debtor's twenty (20) largest general unsecured creditors (to the extent practicable); (iv) all secured creditors; and (v) any party who has filed an appearance

and served same on the Debtor prior to service. The Debtor requests that the Court consider such notice of the Interim Hearing to be sufficient notice under Bankruptcy Rules 4001(c) and (d) and 6004(a)(2). Debtor requests notice of the Final Hearing be included in the Interim Order, to include a finding that such notice shall be sufficient notice under Bankruptcy Rules 4001(c) and (d) and 6004(a)(2).

## COORDINATION WITH UNITED STATES TRUSTEE AND COURT

31.     Prior to the Petition Date, Debtor's counsel conferred with the United States Trustee concerning the relief requested by this DIP Motion.

## NO PRIOR REQUEST

32.     No previous request for the relief requested herein has been made to this Court in this Chapter 11 Case.

WHEREFORE, the Debtor respectfully requests that the Court (i) enter the Interim Financing Order substantially in the form and substance of Exhibit B attached hereto (ii) set a further hearing to consider the final approval of the DIP Financing and the entry of the Final Financing Order and (ii) grant such other relief as is just and proper.

Respectfully submitted,

BAKER & DANIELS LLP

/s/ Terry E. Hall

-14-

| | |
|---|---|
| Terry E. Hall (#22041-49)<br>Wendy Wright Ponader (#14633-49)<br>Dustin R. DeNeal (#27535-49)<br>300 N. Meridian Street, Suite 2700<br>Indianapolis, IN 46204<br>Telephone:  (317) 237-0300<br>Facsimile:  (317) 237-1000<br>terry.hall@bakerd.com<br>wendy.ponader@bakerd.com<br>dustin.deneal@bakerd.com | *Proposed Counsel for the Debtor and Debtor-in-Possession* |

BDDB01 6254373v4